```
           IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                   FAYETTEVILLE DIVISION
```

**RODOLFO CHAVEZ**                                              **PLAINTIFF**

        **v.**            **Civil No. 12-5009**

**SUPERIOR INDUSTRIES, INC.**                                   **DEFENDANT**

### MEMORANDUM OPINION

    Now on this 16th day of October, 2012, comes on for consideration **Defendant's Motion for Summary Judgment** (document #13), to which plaintiff has not responded. The Court, being well and sufficiently advised, finds and orders as follows:

    1.   This is an employment discrimination case in which plaintiff Rodolfo Chavez alleges he was terminated from his employment with defendant Superior Industries due to his age and national origin.

    2.   These are the undisputed facts:

    (a)  At all relevant times during this case, Jeff Hicks was the Acting Human Resources Manager at Superior Industries International, Arkansas LLC (Superior), located at 1301 North Dixieland Road, Rogers, Arkansas.

    (b)  Superior, which manufactures cast wheels for the automotive industry, operates a manufacturing plant in Rogers, Arkansas.

    (c)  Superior maintains personnel records of its employees and employment policies in the ordinary course of business, and

Mr. Hicks had access to and custody of such information as the Acting Human Resources Manager for Superior.

(d) According to Mr. Hicks' review of personnel records, Mr. Chavez last received a copy of Superior's Employee Handbook on December 2, 2010.

(e) Pursuant to a signed receipt, Mr. Chavez acknowledged that he received a copy of Superior's Equal Employment Opportunity policy located in the handbook.

(f) The Employee Conduct and Work Rules Policy is contained in the handbook, as well.

(g) On July 6, 2011, Mr. Chavez was employed as a melt handler working in Superior's Melt Department.

(h) As a melt handler, Mr. Chavez's primary job duties included the transport of molten metal from a melting furnace to a series of small holding pots that supply casting machines with molten metal.

(i) It is critical that holding pots do not run low or out of metal. If a holding pot runs low or is out of metal, extensive damage and down time will occur.

(j) When a holding pot is running low of metal, a flashing light appears on the holding pot. The flashing light indicates that the holding pot should receive priority over metal pots without flashing lights.

(k) On July 6, 2011, Team Lead Mario Guzman had supervisory

authority over Mr. Chavez. Mr. Guzman had the authority to direct Mr. Chavez's work activity.

(l)  On July 6, 2011, Mr Guzman instructed Mr. Chavez to pour molten metal into Machine #25. At that time, Machine #25 was a holding pot with a flashing light. Mr. Chavez refused to follow Mr. Guzman's instructions and instead continued to fill other holding pots without flashing lights.

(m)  On July 6, 2011, Mr. Chavez became angry with Mr. Guzman's instructions and walked out of the building. Mr. Chavez abandoned his position at a critical time during his shift. On July 6, 2011, Mr. Chavez was insubordinate and refused to follow critical work instructions.

(n)  Mr. Hicks met with Mr. Chavez on July 7, 2011, and interviewed him about the events of July 6, 2011.

(o)  During the meeting on July 7, 2011, Mr. Chavez indicated to Mr. Hicks that his Team Lead, Mr. Guzman, had instructed Mr. Chavez to pour molten metal into a holding pot with a flashing light. Mr. Chavez further indicated to Mr. Hicks that he had refused to follow Mr. Guzman's instructions and instead continued to fill the other holding pots without flashing lights.

(p)  During the meeting, Mr. Hicks specifically asked Mr. Chavez why he refused to follow Mr. Guzman's instructions. Mr. Chavez indicated to Mr. Hicks that he "felt like he knew more than Mr. Guzman." Mr. Chavez further indicated that he became

frustrated with Mr. Guzman and his co-worker and walked off the job, leaving the building.

(q)  After the July 7, 2011 meeting, Mr. Hicks determined that Mr. Chavez should be placed on suspension pending further investigation.

(r)  Mr. Chavez was terminated from Superior on or about July 14, 2011, because Mr. Chavez was insubordinate on July 6, 2011, walked off of the job on July 6, 2011, and had a documented history of at least four prior performance issues. Mr. Hicks reviewed Mr. Chavez's performance history prior to his termination.

(s)  Superior first learned of Mr. Chavez's discrimination concerns when it received his Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).

(t)  Mr. Chavez filed his Charge of Discrimination on August 8, 2011, alleging that he was discriminated against between July 7, 2011, and July 14, 2011. In the Charge of Discrimination, Mr. Chavez alleged only that he had endured national origin discrimination.

3.  Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.56(a). Once the moving party has satisfied its initial burden of identifying those portions of the pleadings, discovery, and

affidavits which demonstrate the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set out specific facts showing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party fails to do so, the moving party is entitled to judgment as a matter of law. *Id.*

    4.   In his Complaint, Mr. Chavez states that he "never denied to perform the job" and that "there is no evidence of the insubordination." He further states, "I believe I was discharged based on my national origin, subsequently also by my age." Mr. Chavez offers no other evidence to support either claim.

    5.   To the extent Mr. Chavez alleges discrimination based on his age, that claim must fail because there is no indication that the claim was raised before the EEOC. The proper exhaustion of administrative remedies is necessary before a claim for age discrimination may be brought in federal court. *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005). Mr. Chavez's Charge of Discrimination claimed only discrimination due to his national origin, and he has presented no evidence of any other Charge before the EEOC.

    6.   With regard to his national-origin discrimination claim, Mr. Chavez has failed to present a prima facie case. In the absence of direct evidence of discrimination, the plaintiff bears the burden of establishing a case that creates a presumption of

unlawful discrimination by the employer. *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir. 1996). Mr. Chavez has not done so. He has presented nothing, other than the bare assertions contained in his Complaint, from which the Court can determine that Superior unlawfully terminated his employment. To the contrary, Superior has presented evidence of legitimate, nondiscriminatory reasons for its personnel decisions affecting Mr. Chavez. Therefore, there is no genuine issue of material fact, and Superior is entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** that **Defendant's Motion for Summary Judgment** (document #13) is hereby **granted.** This matter will be dismissed by separate order.

**IT IS SO ORDERED.**

                                          /s/ Jimm Larry Hendren
                                          **JIMM LARRY HENDREN**
                                          **UNITED STATES DISTRICT JUDGE**